IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WORLDLY DIEAGO HOLSTICK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:21-cv-594-ECM-JTA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Worldly Dieago Holstick is before the court with a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. No. 1.)[1] For the reasons discussed below, the court finds Holstick's § 2255 motion should be denied without an evidentiary hearing and dismissed with prejudice.

## I.  BACKGROUND

In October 2017, Holstick and 18 codefendants were charged in a 37-count indictment alleging crimes related to the operation of a largescale drug ring dealing in controlled substances including cocaine and marijuana. (Doc. No. 13-1.) Holstick was named in 15 counts of the indictment. (*Id*.) Trial began on August 6, 2018, but in the middle of trial, Holstick changed his mind and directed his counsel to explore a plea offer. (Doc.

---

[1] References to documents filed here are designated as "Doc. No." References to documents filed in the underlying criminal case (No. 3:17-cr-223) are designated as "Crim. Doc. No." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the copies as presented for filing.

No. 14-2 at 14.) On August 9, 2018, Holstick pled guilty under a written plea agreement to three counts in the indictment: (1) conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count 1);[2] (2) money laundering, in violation of 18 U.S.C. § 1956(h) (Count 2); and (3) possession of a firearm to further a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 15). (Doc. No. 13-3.) The plea agreement contained a provision in which Holstick waived his right to appeal or collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct. (Doc. No. 13-2 at 7–8.) The plea agreement also contained a carveout allowing Holstick to appeal the district court's denial of his motion to suppress. (*Id*. at 8.) In exchange for Holstick's guilty plea, the government agreed to dismiss the remaining counts against him. (*Id*. at 4.)

On July 30, 2019, the district court sentenced Holstick to 420 months in prison, consisting of 360 months on Count 1 and 240 months on Count 2, to be served concurrently, and 60 months on Count 15, to be served consecutively to the sentence on the other counts. (Doc. No. 13-7 at 14; Doc. No. 1-1 at 1–2.)

Holstick appealed, challenging the district court's denial of his motion to suppress. (Doc. No. 13-8.) On April 20, 2020, the Eleventh Circuit affirmed his conviction and sentence. *United States v. Holstick*, 810 F. App'x 732 (11th Cir. 2020); (*see* Doc. No. 13-9).

---

[2] Count 1 of the indictment alleged that the drug conspiracy involved distribution of 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, marijuana, Xanax, and MDMA (commonly called "Molly"). (Doc. No. 13-1 at 2–3.)

On August 8, 2021, Holstick filed this § 2255 motion asserting the following claims:

1.     Counsel was ineffective for misinforming Holstick of the consequences of his guilty plea, specifically, by advising him that if he pled guilty, he would be held responsible only for the marijuana distributed in the conspiracy and that the amount of cocaine distributed in the conspiracy would not be factored into his sentence.

2.     Counsel was ineffective for failing to inform Holstick of the role the sentencing guidelines would play in his ultimate sentence.

3.     Counsel was ineffective for failing to timely request that an expert examine the contents of the DVR that the police recovered from his home.

(Doc. No. 1 at 4–7; Doc. No. 2 at 13–23.)

## II.   DISCUSSION

### A.   Legal Standard

A prisoner may have relief under § 2255 when the trial court imposes a sentence that (1) violates the Constitution or laws of the United States, (2) exceeds its jurisdiction, (3) exceeds the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011). Relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines that a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The burden of establishing that vacatur of a conviction

or sentence is appropriate falls upon the petitioning prisoner. *See Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

**B.      Review of Claims of Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient when it falls below "an objective standard of reasonableness and [is] outside the wide range of professionally competent assistance." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted). Generally, to establish prejudice a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Unless a petitioner satisfies the showings required under both the performance and prejudice prongs of *Strickland*, relief on an ineffective-assistance claim should be denied. *Id.* at 687. Once a court decides that one of the requisite showings under *Strickland* has not been made, it need not decide whether the other one has been. *Id.* at 697; *see Clark v. Comm'r, Alabama Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021).

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, then, a petitioner "must show that there is a reasonable probability that, but for counsel's

4

errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Id*. A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is not enough to establish prejudice; the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis,* 902 F.2d 489, 494 (7th Cir. 1990*); see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing just because a defendant alleges ineffectiveness of counsel when the record affirmatively contradicts the allegations).

### 1.    Alleged Misinformation About Consequences of Plea

Holstick claims his counsel rendered ineffective assistance by misinforming him of the consequences of his guilty plea. (Doc. No. 1 at 4; Doc. No. 2 at 13–18.) He alleges that his counsel advised him that if he pled guilty, he would be held responsible only for the marijuana distributed in the conspiracy charged in Count 1 and that the amount of cocaine distributed in the conspiracy would not be factored into his sentence. (Doc. No. 2 at 15–18.) According to Holstick, his counsel advised him that because he would be held responsible only for the marijuana, his overall sentence upon pleading guilty would be limited to 11 to 16 years' imprisonment. (*Id*. at 15.) He maintains that his counsel's misrepresentations induced him to plead guilty when he otherwise would have opted to go to trial. (*Id.* at 18.)

Holstick submits affidavits from himself, his father, and his uncle, all stating that he was informed by his counsel that he would held responsible only for the marijuana distributed in the drug conspiracy and that his sentence would be between 11 and 16 years

5

in prison. (Doc. Nos. 2-1, 2-2, 2-3, and 2-4.) In an affidavit responding to Holstick's claims, his former counsel, Stephen M. Katz,[3] states these allegations are false, that Holstick knew when pleading guilty that he would be held responsible for the cocaine distributed in the conspiracy, that Holstick knew about the drugs the government was seeking to attribute to him, and that Holstick was informed by counsel before pleading guilty that the drug amounts for which he would be held responsible would have to be "fought out" at sentencing. (Doc. No. 14-2 at 13–15.)

Katz indicates in his affidavit that the plea agreement under which Holstick pled guilty on August 9, 2018, was not the government's first plea offer. According to Katz, two days earlier the government had offered Holstick a plea deal with terms more favorable to Holstick. (Doc. No. 14-2 at 13–14.) Holstick originally agreed to that plea deal but changed his mind a few minutes later and opted to go to trial. (*Id*. at 14.) At trial, after the government introduced evidence that Katz characterizes as "extremely strong and includ[ing] video, wire taps, and photographs," Holstick directed his attorneys to explore a new plea deal. The plea deal to which Holstick ultimately pled was not as favorable to him as the offer he earlier rejected. (*Id*. at 13–15.) Katz asserts that under both plea offers, Holstick was required to litigate the attributable drug amounts at sentencing. (*Id*.)

Katz states that he and co-counsel Bruce Harvey recommended that Holstick accept the new, though less favorable plea offer "because Holstick was certainly going to receive

---

[3] Katz and Attorney Bruce Harvey represented Holstick at all times relevant to the claims in Holstick's § 2255 motion.

a life sentence if, as we believed, he was convicted on all the charges." (Doc. No. 14-2 at

14–15.) Katz further states:

> On August 9, we specifically discussed with Mr. Holstick "relevant
> evidence" and the fact that he would be arguing about "drug weight" during
> sentencing. My contemporaneous written notes that day support my memory
> of what Mr. Harvey and I told Holstick. Mr. Harvey was blunt and clear with
> Mr. Holstick during the August 9 meeting, including regarding fighting out
> drug weight at sentencing:
>
> > 9:12 BSH: The problem w/ this case is your own video. Our
> > position is to fight out weight & get acceptance of
> > responsibility.
>
> > 19.  I specifically remember Mr. Harvey going over and discussing
> > drug weights with Mr. Holstick and informing Mr. Holstick that we would
> > have to fight out the issue of drug weight at sentencing. Mr. Holstick's
> > statements to the contrary are completely false. The drug weights the
> > Government was claiming were no secret. They had been laid out by the
> > Government in a DEA-6 during Mr. Miller's [a coconspirator and
> > cooperating government witness] proffer session. We had numerous
> > discussions with Mr. Holstick regarding Mr. Miller's proffer and the amount
> > of drugs that Mr. Miller claimed/estimated that Mr. Holstick was regularly
> > selling. Our goal at this point was to do everything we could to save Mr.
> > Holstick from what would most certainly have been a life sentence.

(*Id.* at 15.)

The undersigned finds that the record establishes Holstick knew when pleading

guilty that the cocaine distributed in the conspiracy would be factored into his sentence.

The written plea agreement, which Holstick affirmed he had read and understood, included

as part of the factual basis that Holstick conspired to distribute "500 grams or more of a

mixture or substance containing a detectable amount of cocaine hydrochloride ('powder'

cocaine)." (Doc. No. 13-2 at 7; *see* Doc. No. 13-3 at 6.) At the change of plea hearing, the

magistrate judge informed Holstick that he was pleading guilty to conspiracy to distribute

cocaine hydrocholoride and informed Holstick of the elements of that offense. (Doc. No. 13-3 at 16–17.) As to the conspiracy, the magistrate judge asked Holstick,

> And at that time and in those places, did you and other persons listed in this indictment or others not listed in this indictment come to an understanding where you or they, acting together, would, in some way or manner, possess and possess with intent to distribute 500 grams or more of cocaine hydrochloride, what's commonly called powder cocaine?

(*Id.* at 18.) Holstick responded in the affirmative. (*Id.* at 19.) Following the magistrate judge's question, Holstick's counsel challenged the amount of powder cocaine attributable to Holstick—stating that although Holstick acknowledged that more than 500 grams of cocaine were involved in the conspiracy, he did not agree that more than 500 grams of cocaine were attributable to him individually. (*Id.* at 18–19.) Holstick did not object to his counsel's acknowledgment that the conspiracy he was pleading guilty to involved the distribution of cocaine.

At the change of plea hearing, Holstick also affirmed to the court that no one had threatened him or made any promises to him to get him to plead guilty. (Doc. No. 13-3 at 6.) He further affirmed that he and his counsel had discussed how the advisory sentencing guidelines would apply in his case; that he understood the district court would not determine his guidelines range until after the presentence report ("PSR") was completed; that he understood his sentence would be determined by a combination of the advisory guidelines, any possible authorized departures from the guidelines, and other sentencing factors; and that he understood his actual sentence might differ from any estimate his counsel had given him. (*Id.* at 9–12.)

The record shows that Holstick affirmed to the court, under oath, that no one made any promises that induced him to plead guilty and that he understood any estimates by his counsel regarding his sentence could be incorrect. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). The undersigned finds that Holstick fails to meet his burden to rebut his sworn statements at the change of plea hearing that no one had made any promises that induced his guilty plea, and that he understood any estimates by his counsel about his sentence could be wrong.

At sentencing, Holstick made statements indicating that he knew, when pleading guilty, that the cocaine distributed in the conspiracy would be factored into his sentence. In claiming to the district court at sentencing that he had dealt only in marijuana, Holstick complained that pleading guilty to conspiracy to distribute only marijuana was not an option available to him or certain of his codefendants: "They just only—they were forced to plead to cocaine, the same way I was, you know, because they was saying wasn't no drug amount for the marijuana and all that. You had to plead to cocaine." (Doc. No. 13-7 at 21.) Holstick's statements reflect that, although he was unhappy about it, he knew he was pleading guilty to conspiracy to distribute cocaine and thus knew he would be held

responsible for the amount of cocaine distributed in the conspiracy, not just marijuana.[4] Indeed, it would have been unreasonable for Holstick to believe (as he claims he did) that his cocaine distribution would be disregarded at sentencing when the distribution of that drug as part of the conspiracy, and not the other drugs also charged in Count 1, was the sole focus of the discussion of that count in the written plea agreement and at the change of plea hearing.[5]

On this record, Holstick's contention that he would not have pled guilty but for his counsels' alleged ineffectiveness is not credible. The Eleventh Circuit has held that the allegations of a § 2255 petitioner accompanied by his own affidavit are not enough to mandate an evidentiary hearing in the face of a record contravening the defendant's affidavit. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that, when a defendant tenders only his own affidavit to counter previous directly

---

[4] Although Holstick had an opportunity at sentencing to allege that his counsel had misinformed him about these matters, he did not do so. Holstick's first assertion that his counsel had assured him that the cocaine distributed in the conspiracy would not be factored into his sentence was in his § 2255 motion.

[5] In his own affidavit, Holstick states that he first understood the consequences of his plea, with respect to his possible sentence, when he received his PSR. (Doc. No. 2-1 at 2.) At no point before or during sentencing did Holstick complain that he had been misled by his counsel regarding his sentence, seek to replace counsel, or seek to withdraw his guilty plea. Holstick's failure to complain or move to withdraw his guilty plea weighs against his present allegations about his counsel's actions. *See Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) ("[A]fter Cruz received the Presentence Investigation Report and moved to have counsel substituted, she never openly complained about her counsel's ineffectiveness or attempted to withdraw her guilty plea. Thus, Cruz is unable to demonstrate prejudice due to the fact that she was aware of her attorney's conflict, was informed of her rights and disavowed any problems with counsel at the plea hearing, and still elected to plead guilty after [a different attorney] was substituted as her counsel of record.").

inconsistent testimony about plea coercion, "[t]he district court is entitled to discredit [the] defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements"); *see also Lynn*, 365 F.3d at 1239 ("Because the . . . affidavits submitted by [the movant] amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied [the] § 2255 motion."). Because it is clear from the record that Holstick's claim lacks merit, no evidentiary hearing is required to address the claim.

Holstick fails to establish deficient performance by counsel that led him to plead guilty when he otherwise would not have, or that he was prejudiced by counsel's performance. Therefore, he is entitled to no relief on this claim of ineffective assistance of counsel.

**2.     Explanation of Role of Sentencing Guidelines**

Holstick claims his counsel was ineffective for failing to inform him of the role the sentencing guidelines would play in his ultimate sentence. (Doc. No. 1 at 7; Doc. No. 2 at 18–21.)

Addressing Holstick's claim, his former counsel Katz states:

> 20.   On August 7 and on August 9, 2018, [co-counsel] Mr. Harvey and I specifically pulled out the U.S. Sentencing Guidelines book that Mr. Harvey and I take to every federal trial. We painstakingly went through the guidelines with Mr. Holstick, advised him as to the effect of the guidelines and advised Mr. Holstick that [codefendant] Mr. Miller's testimony would be the primary evidence against Mr. Holstick regarding the "drug weight" at sentencing.
>
> 21.   We reviewed the base level offense calculation and went through each and every enhancement that we believed could be applicable, including (a) the money laundering enhancement, (b) sophisticated laundering, (c)

11

leadership role, (d) allegations of violence, (e) maintaining a premises for the use of drug trafficking. We reiterated our previous counsel to Mr. Holstick that a conviction under 18 U.S.C. § 924(c) required the court to impose a five year consecutive sentence.

22. In deciding whether to accept the plea at this point, Mr. Holstick was confident and willing to bet that the court would find that he was not responsible for more than 500 grams of cocaine. We advised Mr. Holstick that a finding to the contrary with regarding to the amount of cocaine could mean substantial prison time.

23. We spoke with Mr. Holstick about his criminal history. Mr. Holstick's criminal history was a whopping 16 points; the maximum criminal history points is 13. We specifically informed Mr. Holstick that we could not do anything about the criminal history number.

(Doc. No. 14-2 at 16–17.)

As noted earlier, at the change of plea hearing, Holstick affirmed under oath to the magistrate judge that he and his counsel had discussed how the sentencing guidelines would apply in his case. (Doc. No. 13-3 at 9.) There is a strong presumption that Holstick's affirmation was true, *Medlock*, 12 F.3d at 187, and Holstick fails to meet his burden of rebutting his sworn statement to the magistrate judge. Further, the magistrate judge explained to Holstick the role the sentencing guidelines would play in determining his sentence. The magistrate judge explained that the district court would not determine Holstick's guidelines range until after the PSR was completed; that his sentence would be determined by a combination of the advisory guidelines, any possible authorized departures from the guidelines, and other sentencing factors; and that his actual sentence might differ from any estimate his counsel had given him. (Doc. No. 13-3 at 9–12.) Periodically, the magistrate judge stopped to ask Holstick if he understood these matters, and each time, Holstick said he did. (*Id.*) Consequently, even if Holstick's counsel failed to adequately

explain the sentencing guidelines to Holstick, the magistrate judge's explanations cured any alleged failure by counsel. *See United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007) (because the district court explained in detail the consequences of Wilson's guilty plea, "any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court").

Because Holstick can show no prejudice here, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.   Failure to Timely Request Expert to Examine Contents of DVR

Holstick claims that his counsel was ineffective for failing to timely request that an expert examine the contents of the DVR that the police recovered from his home. (Doc. No. 1 at 7; Doc. No. 2 at 21–23.)

The DVR included video footage of Holstick with drugs and guns and also recorded a drive-by shooting. Holstick maintains that an expert examining the DVR would have found that the footage had been tampered with by the government. (Doc. No. 2 at 22.) He suggests that discovery of the alleged government tampering would have been the basis for excluding the footage from evidence. (*Id.*)

Addressing Holstick's claim, Attorney Katz states:

> 25.  On April 13, 2018, my notes reflect that I received a call from Worldly Holstick at 12:07 p.m. ET. During that call, we discussed police officer Scott Kendall's apparent admission at a hearing on April 12, 2018 that officers clearing the trailer after the drive by shooting kicked or tripped over the black box in the middle of the floor. During the April 13, 2018 call, Worldly Holstick asserted to me for the first time that his own surveillance camera video that the Government played during the suppression hearing had been "altered" by the Government. Mr. Holstick could not provide any

specific evidence or even a reason as to why he believed the Government had "altered" the video from the trailer's surveillance cameras.

26.   I thereafter advised Mr. Holstick and his family that if they wanted to pursue Holstick's theory that the DVR had been "altered" by the United States Government, it would be necessary for them to retain an expert witness to examine the camera and DVR. I advised them that I did not think it would be a good use of resources. I advised them if they wanted to proceed with an expert witness to prove an alteration of the video, a company called Video Impact was a group that could provide expert testimony.

27.   On June 13, 2018, I sent Holstick, through his friend D.M., an email advising him that

> The case was ongoing for over a year when I became involved, and the pretrial order had already been submitted. No expert had been hired or requested by you or your previous attorneys. The video clearly shows you in possession of a gun and a plastic bag of weed. The photos show you dressed in a shirt which states "The Cartel" on the front and "Escobar" on the back and with a bag of powder in your hands.

28.   On June 28, 2018, Holstick filed a pleading declaring himself to be a "sovereign citizen" and terminated Mr. Harvey and me as his counsel. On July 24, 2018, The court held a hearing and thereafter entered an order finding that Holstick "expressed his unequivocal desire to represent himself." (Doc. 779). The court's order allowed Mr. Holstick to represent himself and directed Mr. Harvey and I to serve as "stand-by" counsel and provide Holstick with advice upon request. (Doc. 779).

29.   In late July 2018, despite the fact that he was representing himself, Holstick requested assistance from me in filing a motion for an order (1) directing the Government to provide a room at the jail for him to review the evidence as he was acting as his own counsel, and (2) directing the Government to allow an expert to examine the DVR.

30.   On July 31, 2018, despite the fact that Holstick was now pro se and pursuant to his request, Mr. Harvey and I filed a "Motion for Access to Evidence." The motion contained two requests from Holstick. First he wanted to inspect and have an expert look at the surveillance DVR in possession of the Government. Second, he requested a room at the jail to review evidence. I noted in the motion that "Stand-by counsel files this motion because Mr. Holstick is incarcerated and not able to do so prior to

trial." (Doc. 795). Holstick's motion was granted in part and denied in part. The U.S. Attorney was directed to provide him with a room to review evidence, but the motion for examination by an expert witness was denied [as untimely].[6]

31.  Mr. Holstick's statement that we were ineffective for failing to file a motion for an expert to examine the DVR is meritless for two reasons. First, the deadline for filing such a motion had expired by the time we entered the case. Second, there was no plausible evidence that the DVR had been altered or, even if it had, that the evidence thereon was false. In fact, Mr. Holstick admitted the video of him wearing "The Cartel" jersey was accurate. He admitted the video of him with firearms inside the trailer was accurate. Although he denied that cocaine was present on the video, the still photographs showed Holstick in possession of cocaine while holding a firearm. Given Holstick's admissions about what was shown on the video, it is impossible to imagine a plausible scenario in which an alteration of DVR could have rendered the video inadmissible.

(Doc. No. 14-2 at 17–20.)

Holstick fails to demonstrate deficient performance in his counsel's failure to timely request that an expert examine the contents of the DVR. By the time counsel entered the case, it was too late to request an expert, and counsel reasonably believed having an expert conduct such an examination would not be fruitful for the defense. Holstick also demonstrates no prejudice, because he fails to prove that video footage recorded on the DVR was tampered with. He merely asserts that because portions of the video appear to "jump," there is evidence of government tampering. (Doc. No. 2 at 21.) But no evidence of tampering has been produced. Holstick further fails to show how an expert's examination of the contents of the DVR might logically have led to the exclusion of footage

---

[6] On August 6, 2018, the first day of Holstick's trial, Holstick informed the district court that he no longer wished to proceed pro se. The court then granted Attorneys Katz and Harvey an extension of 48  hours to review and prepare for trial. The same attorneys later represented Holstick in the guilty plea proceedings and on appeal.

showing him with drugs and guns and recording the drive-by shooting. Moreover, as the government notes, the evidence against Holstick was significant, with or without the DVR footage. (Doc. No. 13 at 13.) Finally, Holstick does not demonstrate how an expert's examination of the DVR's contents would have resulted in his choosing to proceed to trial rather than pleading guilty.

Because Holstick shows neither deficient performance by counsel nor resulting prejudice, he is entitled to no relief on this claim.

### III.  CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Holstick be DENIED and that this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before July 15, 2024**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning*

*Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661

F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 1st day of July, 2024.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE